# Exhibit "A"

12-11-25                    12:15pm

Filing # 237357134 E-Filed 12/09/2025 04:23:05 PM

JT        1679

| ☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. ☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |
|---|---|---|
| **DIVISION** ☒ CIVIL ☐ DISTRICTS ☐ OTHER | **SUMMONS 20 DAY CORPORATE SERVICE** **(a) GENERAL FORMS** | **CASE NUMBER** 2025-015800-CA-01 |
| **PLAINTIFF(S)** ORIGIS ENERGY USA, INC. | **VS.  DEFENDANT(S)** **COPPER HILL, INC.** | **SERVICE** |

THE STATE OF FLORIDA:

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s):  COPPER HILL, INC. 430 W 5th Street, Panama City, Florida 32401

to their Registered Agent:  C T CORPORATION SYSTEM

1200 SOUTH PINE ISLAND ROAD PLANTATION, FL 33324

Each defendant is required to serve written defense to the complaint or petition on
Plaintiff's Attorney: Edward Mullins

whose address is:  Reed Smith LLP

200 South Biscayne Boulevard Suite 2600 Miami, FL 33131

within 20 days " <u>**Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to s. 768.28, Florida Statutes, the time to respond shall be 30 days.**"** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| **JUAN FERNANDEZ-BARQUIN** **CLERK OF THE COURT AND COMPTROLLER** **MIAMI-DADE COUNTY** **CIRCUIT AND COUNTY COURTS** | BY:_____ 38084 DEPUTY CLERK | **DATE** 12/11/2025 |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@jud11.flcourts.org; or via Fax at (305) 349-7355, at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

Filing # 229439952 E-Filed 08/14/2025 01:55:27 PM

IN THE CIRCUIT COURT FOR THE
ELEVENT JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO.

ORIGIS ENERGY USA, INC.,

      Plaintiff,

vs.

COPPER HILL, INC.,                JURY TRIAL DEMANDED

      Defendant.

_____/

## COMPLAINT

Plaintiff Origis Energy USA, Inc. ("Origis") sues defendant Copper Hill, Inc.
("Copper Hill") on the following grounds.

## INTRODUCTION

1.     This case arises from Copper Hill's egregious breaches of contract and
professional failures, which resulted in millions of dollars in avoidable financial
losses for Origis Energy USA, Inc.

2.     Copper Hill, a self-proclaimed expert in customs compliance and
international trade management, held itself out as a trusted partner for Origis'
import operations. However, rather than delivering the high-level expertise it
promised, Copper Hill's actions and inactions with respect to critical governmental
compliance obligations directly led to disastrous financial consequences for Origis.

3.     Copper Hill marketed itself as an authority in navigating complex
Foreign-Trade Zone (FTZ) regulations, customs brokerage, and import compliance.

It assured Origis that it had the knowledge and experience necessary to ensure seamless, risk-free importation of solar modules—an assurance that Origis relied upon in structuring its import operations.

4.      Despite these representations, Copper Hill failed at the most fundamental aspects of its duties. It provided untrue compliance assurances, mishandled critical customs filings, and allowed regulatory deadlines to lapse, all while charging Origis for its purported "expert" services.

5.      Specifically, Copper Hill assured Origis that its imported solar modules had been properly imported into U.S. commerce and that the modules could remain in a bonded warehouse beyond a June 6, 2024 AD/CVD (antidumping and countervailing duties) deadline without financial risk, when in fact that was untrue. As a result of Copper Hill's failures, Origis became subject to more than $6 million in additional duties and penalties..

6.      Copper Hill's pattern of negligence and mismanagement extended beyond a mere oversight. When confronted with its errors, Copper Hill did not take immediate corrective action. Instead, it delayed, evaded accountability, and attempted to shift blame onto Origis itself.

7.      This lawsuit seeks to hold Copper Hill accountable for its blatant failures, breach of contract, and professional negligence. Origis has suffered substantial financial harm as a direct result of Copper Hill's conduct and now seeks full redress for its losses, including consequential and compensatory damages, attorneys' fees, and all other relief deemed appropriate by this Court.

**THE PARTIES**

8.      Plaintiff, ORIGIS ENERGY USA, INC., is a corporation, licensed to do business in the State of Florida, with its principal place of business located at 800 Brickell Avenue, Miami, Florida 33131.

9.      Defendant, COPPER HILL INC., is a foreign for-profit corporation, licensed to do business in the State of Florida, a place of business located at 430 W 5th Street, Panama City, Florida 32401.

**JURISDICTIONAL ALLEGATIONS AND VENUE**

10.      This Court has subject matter jurisdiction over this action because this is an action for damages, which in the aggregate, exceed $50,000.00 exclusive of interest, costs and attorneys' fees.

11.      This Court has personal jurisdiction over Copper Hill Inc. because Copper Hill is registered to do business in the State of Florida and maintains a place of business in Panama City, Florida. This Court also has personal jurisdiction over Copper Hill pursuant to Fla. Stat. § 48.193 because Copper Hill engages in substantial and not isolated activity within Florida, committed a tortious act within Florida, and breached a contract in Florida by failing to perform acts required by the contract to be performed in this state. Moreover, Copper Hill caused Plaintiff to suffer damages in Florida. The foregoing also establishes sufficient minimum contacts to satisfy due process.

12.      Venue is proper in this Court pursuant to Fla. Stat. § 47.011 because the causes of action alleged herein accrued in Miami-Dade County.

- 3 -

## MATERIAL ALLEGATIONS

13.     Plaintiff Origis Energy is a leading renewable energy company engaged in the development, construction, and operation of solar energy and energy storage projects across the United States.

14.     Origis specializes in large-scale utility, commercial, and municipal solar projects, partnering with utilities, corporations, and government entities to provide reliable and sustainable clean energy solutions.

15.     To support its mission of expanding clean energy infrastructure, Origis has established strategic partnerships to procure solar modules from both domestic and non-domestic (international) suppliers.

16.     The international procurement of solar modules presents significant regulatory challenges, requiring meticulous navigation of import regulations, trade laws, and compliance protocols.

### Regulatory Challenges and The Role of Copper Hill

17.     Among the most intricate aspects of this process is the ever-evolving landscape of tariffs and trade regulations governing the importation of solar modules. Compliance demands not only industry expertise but also a sophisticated understanding of global trade frameworks.

18.     The timely and compliant importation of goods is critical in international trade. Failure to adhere to strict regulatory deadlines—such as missing filing requirements, late submission of import documentation, or failure to

- 4 -

properly classify goods—can have severe financial consequences. Customs authorities impose substantial penalties for noncompliance, including fines, increased duties, and even the potential seizure of goods.

19.     Delays in the import process can disrupt entire supply chains, causing project setbacks, contractual breaches, and cascading financial losses.

20.     For a company like Origis, which, for example, builds solar power plants pursuant to contracts with governmental entities and for which precise project timelines are essential, any delay in receiving critical components—such as solar modules—can jeopardize multimillion-dollar contracts, hinder energy production commitments, and result in reputational damage with key stakeholders, including utilities, government entities, and investors.

21.     Given the complexity of these regulatory requirements, companies like Origis frequently engage specialists in import compliance to facilitate seamless transactions while ensuring full legal compliance.

22.     Copper Hill represents itself as precisely such an expert in the field. Copper Hill specializes in global trade solutions, offering services focused on customs compliance and international trade management.

23.     Copper Hill publicly markets itself as a leading authority in Foreign-Trade Zones ("FTZ"), Free Trade Agreements, Customs Broker Management, Post-Entry Services, and overall import compliance.

24.     As part of its suite of services, Copper Hill claims to assist clients in reducing operational costs through duty deferral and elimination, while ensuring

compliance with U.S. Customs regulations. Among its purported expertise, Copper Hill represents itself as proficient in overseeing inventory control, recordkeeping, and other critical compliance-related functions, and specifically promotes itself as an "Expert FTZ Administrator."

25.     Recognizing these risks, Origis sought the expertise of Copper Hill, which described itself as an industry leader in customs compliance and international trade management.

26.     Origis contacted Copper Hill to assess its ability to provide strategic guidance and regulatory compliance services, including in connection with Origis' importation of modules from abroad.

27.     Copper Hill assured Origis that it possessed the requisite expertise in the field and was well-equipped to assist.

### The August 2023 Agreement

28.     Relying on Copper Hill's representations of expertise, Origis entered into a contract with Copper Hill, dated August 17, 2023, pursuant to Copper Hill's U.S. Customs Brokerage Services Proposal, attached as Exhibit A (the "Agreement").

29.     The Agreement expressly represented Copper Hill's expertise in customs compliance and trade regulations, stating that its team consists of experienced professionals relied upon by clients to ensure regulatory compliance while minimizing import/export costs.

30.     Pursuant to the Agreement, Origis retained Copper Hill as' its customs broker and agent, responsible for, among other things, handling U.S. Customs and Border Protection ("CBP") filings, including customs entries, export declarations, and related documentation.

31.     Copper Hill agreed, among other things, to act as Origis' agent for entry and release of goods, post-entry services, and other import compliance matters.

32.     The Agreement outlined a broad scope of responsibilities, including but not limited to:

      i.     Type 01 Entry (Consumption);

      ii.    Type 03 Entry Filing (AC/CVD);

      iii.   Type 06 Entry Filing (FTZ);

      iv.   Type 09 Entry Filing (Reconciliation);

      v.    Type 31 Entry Filing (Bonded Warehouse);

      vi.   Post Summary Correction ("PSC");

      vii.  Entry Cancellation;

      viii. ISF Filing; and,

      ix.   In-Bond Transportation Entries.

33.     Origis agreed to compensate Copper Hill on a monthly basis.

34.     The Agreement further provided that Copper Hill could perform additional consulting and audit services upon written request, with consulting services billed at hourly rates depending on seniority level: Executive – $450/hour, Director – $350/hour, Manager – $250/hour, Analyst – $175/hour.

35.    In reliance on Copper Hill's expertise and contractual commitments, Origis retained Copper Hill not only for brokerage services but also for its specialized consulting services, paying Copper Hill at the agreed-upon rates.

36.    With Copper Hill engaged to handle all compliance matters, Origis relied on Copper Hill, trusting Copper Hill's assurances that all necessary filings and import regulations would be properly handled.

### Copper Hill's Critical Failures

37.    Origis purchased some solar panel modules from Southeast Asia ("the Panels").

38.    As explained below, despite Copper Hill's contractual obligations and representations of expertise, it committed multiple critical errors with respect to the Panels, resulting in severe financial consequences for Origis.

39.    When products manufactured outside the United States are brought into the country, the government sometimes imposes tariffs and charges duties for certain of those products.  Those duties can be substantial.  They can change over time.  So for example, there are deadlines by which a product must "imported" into the United States, failing which the product becomes subject to a much higher tariff.  In other words, a product might be eligible to be imported one day pursuant to a low tariff but then be subject to a much higher tariff if it is imported later on.

40.    The regulations for this are quite technical.

41.    Under the rules and regulations applicable to importation and tariffs, a product can enter the United States "physically," but for purposes of the

application of tariffs, duties and other aspects, the product can be deemed *not* to have been "imported" into the United States.

42.     That happens, for example, when a product is placed in a bonded warehouse or free trade zone in the United States.  So the Panels can be physically inside a warehouse here, but the duties are not applied to them until they are moved out (or as happened here, a deadline expires without the modules having been moved out or the duties paid).

43.     In this case, Origis had purchased the Panels and they were stored in a bonded warehouse. The Panels had to be deemed "imported" by June 6, 2024, in order to avoid extreme antidumping and countervailing duties (AD/CVD).

44.     On April 2, 2024, Origis contacted Copper Hill to confirm that everything was in order and in compliance with the applicable law, rules and regulations.

45.     Specifically, the Origis sought verification that: (1) All modules that had ben stored in the bonded warehouse had been "officially entered" into the United States, (meaning, they were deemed to have been "imported" timely (and therefore not subject to the much higher tariffs/duties that would kick in on June 6th) and (2) that the modules still in the warehouse could stay there past the June 6, 2024 AD/CVD deadline with no risk.

46.     Copper Hill unequivocally confirmed that all imports had been cleared and there was no risk.

47.     In reliance on this assurance, Origis structured its project timeline accordingly. However, this purported expert advice was entirely incorrect.

48.     Copper Hill's first admission of their critical mistake came on October 4, 2024 - four months after the June 6 deadline - when it abruptly informed Origis' Project Manager via email that certain SKUs remained unentered, despite previous assurances.

49.     Copper Hill, apparently realizing the severity of its error, then requested that Origis provide documentation proving that it had directed Copper Hill to enter the remaining SKUs.

50.     In response, Origis forwarded Copper Hill's own April 2 email, which had expressly confirmed that the entries already had been completed.

51.     Then, on October 15, 2024, Copper Hill informed Origis that, due to its failure to properly enter the 390W modules before the June 6, 2024, deadline, Origis was now subject to an additional $6,010,456.08 in AD/CVD tariffs.

52.     Copper Hill's failure was a fundamental breach of its contractual and professional duties.

53.     Copper Hill's negligence and failure to exercise reasonable diligence directly caused substantial financial harm to Origis.

54.     Had Copper Hill properly performed its obligations under the Agreement and exercised reasonable care consistent with industry standards in entering the Panels before the critical June 6, 2024, deadline, Origis would not have incurred these substantial financial penalties.

## COUNT I
## <u>BREACH OF CONTRACT</u>

55.     Plaintiff realleges each and every allegation contained in paragraphs "1" through "54" of this complaint inclusive, with the same force and effect as if fully set forth herein.

56.     Origis and Copper Hill entered into the August 17, 2023 Agreement, which is valid and enforceable.

57.     The August 17 Agreement obligated Copper Hill to provide customs brokerage, compliance, and consulting services in accordance with its stated expertise.

58.     Copper Hill failed to: ensure the timely and proper filing of all necessary entries with U.S. Customs and Border Protection; correctly classify, track, monitor and manage Origis' imported solar modules within Foreign-Trade Zones (FTZs) and bonded warehouses; provide accurate information and guidance regarding CBP regulations, including the applicability of the June 6 AD/CVD deadlines; execute all import filings in compliance with the governing trade laws and contractual requirements; enter Origis' solar modules before the critical June 6, 2024 AD/CVD deadline, despite expressly confirming that such entries had already been completed.

59.     Further, Copper Hill submitted incorrect or incomplete customs documentation leading to regulatory noncompliance, misrepresented the status of import entries, causing Origis to rely on inaccurate compliance assurances, and,

- 11 -

failed to execute its contractual duties in accordance with CBP requirements and industry standards.

60.    Copper Hill breached the August 17, 2023 Agreement, including the specific provisions set forth above.

61.    As a direct and proximate result of the foregoing breaches, Origis has been caused to suffer damages, which continue to accrue.

WHEREFORE, Origis demands judgment against Defendant Copper Hill for damages, costs, pre and post judgment interest, and such other and further relief as the Court deems just and proper.

## COUNT II
## PROFESSIONAL NEGLIGENCE

62.    Plaintiff realleges each and every allegation contained in paragraphs "1" through "54-" inclusive of this complaint, with the same force and effect as if fully set forth herein.

63.    Copper Hill holds itself out to the public as an expert in customs compliance and trade management services and are professionals within the meaning of the law.

64.    Copper Hill represented to Origis that its clients "rely on our experience in ensuring a high standard of compliance while at the same time reducing costs associated with the importing and exporting of goods."

65.    Copper Hill further reinforced its claim of expertise by charging an "Expert Consulting Fee" for its specialized services. By marketing itself as an expert and agreeing to provide compliance consulting to Origis, Copper Hill assumed a

duty to perform its services with the level of care, skill, and diligence expected of a reasonably prudent customs compliance professional.

66.     As a professional customs broker and compliance consultant, Copper Hill had a duty to provide accurate and reliable guidance on U.S. Customs and Border Protection regulations, trade laws, and import entry procedures.

67.     Copper Hill failed to provide accurate and reliable guidance on U.S. Customs and Border Protection regulations, trade laws, and import entry procedures.

68.     Copper Hill was obligated to exercise reasonable care consistent with industry standards in: ensuring the timely and proper filing of all necessary entries with U.S. Customs and Border Protection; correctly classifying, tracking, monitoring and managing Origis' important solar modules within Foreign Trade Zones (FTZs) and bonded warehouses; ensuring its compliance recommendation conformed to industry standards and applicable customs laws; verifying the accuracy of its statements regarding the status of Origis' import entries; exercising sound professional judgment to prevent Origis from incurring unnecessary penalties, tariffs or legal exposure; taking the most basic steps to verify its own statements; and, ensuring their conduct was consistent with reasonable customs compliance professionals.

69.     Copper Hill failed to exercise reasonable care consistent with industry standards in: ensuring the timely and proper filing of all necessary entries with U.S. Customs and Border Protection; correctly classifying, tracking, monitoring and

managing Origis' important solar modules within Foreign Trade Zones (FTZs) and bonded warehouses; ensuring its compliance recommendation conformed to industry standards and applicable customs laws; verifying the accuracy of its statements regarding the status of Origis' import entries; exercising sound professional judgment to prevent Origis from incurring unnecessary penalties, tariffs or legal exposure; taking the most basic steps to verify its own statements; and, ensuring their conduct was consistent with reasonable customs compliance professionals.

70.     Copper Hill's failures in exercising reasonable care—despite its professional obligation to do so—directly caused Origis to incur significant financial harm.

71.     The foregoing failures constitute a gross departure from the applicable standards of care for professional negligence under Florida Law.

72.     As a direct and proximate result of the foregoing departures from the acceptable industry standards of care, Origis has been caused to suffer damages, which continue to accrue.

WHEREFORE, Origis demands judgment against Defendant Copper Hill for damages, costs, pre and post judgment interest, and such other and further relief as the Court deems just and proper.

Dated: Miami, Florida                           Respectfully submitted,
       August 14, 2025


                                                By:   *Edward M. Mullins*


                                                Jose I. Astigarraga
                                                FBN 263508
                                                Edward M. Mullins,
                                                FBN 863920
                                                Conor D. Cassidy
                                                FBN 1048579
                                                emullins@reedsmith.com
                                                jia@reedsmith.com
                                                ccassidy@reedsmith.com
                                                Reed Smith LLP
                                                200 South Biscayne Boulevard
                                                Suite 2600
                                                Miami, FL 33131
                                                Tel. (786) 747-0200
                                                Fax. (786) 747-0299

                                                *Counsel for Origis Energy USA Inc.*

- 15 -